UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MARIO GUADALUPE MEZA, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 3:15-CV-0337 |
| § | |
| WILLIAM STEPHENS, *et al*, § | |
| § | |
| Respondents. § | |

## MEMORANDUM AND ORDER

A Texas jury convicted Mario Guadalupe Meza of arson and made an affirmative finding that he used a deadly weapon in the commission of the offense. After unsuccessfully seeking state appellate and habeas relief, Meza seeks a federal writ of habeas corpus under 28 U.S.C. § 2254. (Docket Entry No. 1). Respondent Lorie Davis moves for summary judgment, arguing that Meza's claims are without merit and that he is not entitled to relief. (Docket Entry No. 21). Meza has not filed a response. After reviewing the record, the pleadings, and the applicable law, with special consideration given to the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review, the Court will grant Respondent's motion for summary judgment and deny Meza's petition. The Court will not certify any issue for appellate review.

The Court sets forth the reasons for its adjudication below.

## BACKGROUND

The State of Texas charged Meza with first degree felony arson in 2011. Specifically, the indictment charged that, with "intent to damage or destroy a habitation

located in League City, Texas," Meza "start[ed] a fire . . . by igniting an ignitable substance, knowing that said habitation was within the limits of an incorporated city or town . . . ." Clerk's Record at 6. Meza stood trial under cause number 11-CR-0345 in the 10th Judicial District Court of Galveston County, Texas. Meza retained Joa Sherman and Gene A. Whatkins as defense counsel. As summarized on appeal, the facts presented at trial showed the following:

> Alejandra Quezada and [Meza] had been in a relationship since 2007. [Meza] had assisted Alejandra in finding the location of her home and in designing the house to accommodate her disabled son. Alejandra and [Meza] also had a son, M.C., and had been involved in a long custody battle over him. [Meza] had never been inside the new home. On the night of the fire, [Meza] returned M.C. to Alejandra at a corner store. Alejandra and her two sons stayed at another home that night because the walls in the new house had recently been painted. Alejandra was woken up by her mother and told her house was on fire. Alejandra rushed home.
>
> Officer Eric Leland of the League City Police Department was dispatched to a house fire at approximately 2:00 a.m. When Alejandra came to the police department later that day she told Officer Leland that she believed her ex-boyfriend, [Meza], caused the fire.
>
> [Meza] gave a statement to Officer Leland that was videotaped. The statement was admitted into evidence and played to the jury. [Meza] claimed that on the morning in question, he got home from a bar between 1:30 and 2:00 a.m. He said his receipt from the bar reflected a time of 2:22, but subsequently indicated it might have been 2:00.
>
> Detective Joseph J. Jack, Deputy Fire Marshal for the City of League City, testified he is a certified arson investigator and peace officer. He was dispatched to the fire at Alejandra's home. Detective Jack retrieved a DVR player that was part of the home's security system. Detective Jack testified the burn patterns emanated from the garage. Three walls in the garage had very little damage but one wall had significant damage. The garage was the point of origin and the fire spread upward into the attic. Detective Jack found no sign of forcible entry.

Officer Jonathan Cox of the Pearland Police Department was asked to recover any video from the DVR system. Officer Cox was able to view the video up to a point where the fire stopped the video from recording and he copied that video onto a disk. The video was admitted into evidence. The video depicts the following events, in order and all over a period of approximately two minutes: a male approaching the camera in a hooded jacket, then stooping such that only the top of the jacket remained in the frame, remaining in that position for no more than a minute, standing up, disappearing from the frame, returning to the frame facing away from the camera, walking away from the camera, and then, shortly thereafter, smoke and flickering.

During his statement to Officer Leland, [Meza] admitted the person in the recovered video looked like him, but said he did not have a jacket like the one the person in the video was wearing. [Meza] denied being the person on the video. Officer Leland also testified about an interview with [Meza's] current girlfriend in which she was able to identify not only the person in the video, but also the jacket that the person was wearing. Finally, Alejandra testified at trial and identified the person in the video as [Meza].

Detective Jack testified the video shows [Meza] leaving the garage and there is smoke coming out of the garage. There is a flicker of light in the garage; it grows brighter from the fire growing inside the garage. Detective Jack testified the fire was intentionally set by [Meza].

Gabriel Moreno, a fire explosion investigator, took samples of the debris at the scene. He determined the origin of the fire was the garage. Jeremy Rummel, a senior analyst at Armstrong Forensic Laboratory, tested Moreno's samples. He found the samples contained "a heavy petroleum distillate of the fuel oil series" typical of kerosene, an ignitable liquid. Rummel testified an ignitable liquid was found in the debris.

*Meza v. State*, 2014 WL 1852760, at *1-2 (Tex. App. -Houston [14 Dist.], 2014) (footnotes omitted).

The jury found Meza guilty as charged in the indictment. Clerk's Record at 57. The jury also answered affirmatively a special verdict question which asked whether Meza used a deadly weapon during the commission of the offense. Clerk's Record at 58.

Meza elected for the trial court to assess punishment. Clerk's Record at 66.[1] The trial court sentenced Meza to twenty years confinement. Clerk's Record at 65.

Trial counsel withdrew from representing Meza after sentencing. Clerk's Record at 74. The trial court appointed Joseph G. Salhab to represent Meza on appeal. Clerk's Record at 78, 80. Meza filed a motion for new trial arguing that trial counsel provided ineffective representation, but without identifying any specific errors committed by counsel. Clerk's Record at 82.

On appeal to the Fourteenth Court of Appeals for the State of Texas, Meza claimed that insufficient evidence supported his conviction. Meza based his claim on two arguments: (1) the evidence was insufficient to prove he started the fire and (2) the State did not prove that the fire had an incendiary origin. The appellate court affirmed Meza's conviction in an unpublished opinion. *Meza v. State*, 2014 WL 1852760, at *1-2 (Tex. App. -Houston [14 Dist.], 2014). Meza did not seek discretionary review in the Texas Court of Criminal Appeals.

Meza filed a state application for a writ of habeas corpus raising three claims: (1) trial counsel provided ineffective representation by inadequately preparing for trial and not presenting expert testimony; (2) the evidence was insufficient to support the deadly weapon finding; and (3) appellate counsel performed deficiently. The trial-level habeas court ordered Meza's trial and appellate attorneys to provide affidavits. State Habeas record at 69. Finding the affidavits to be credible, and relying on the State's answer to

---

[1] Meza had previously been convicted of possessing methamphetamine with intent to deliver.

the habeas application, the trial court entered a short order recommending the denial of relief. State Habeas Record at 115-17. The Texas Court of Criminal Appeals denied habeas relief based on the findings of the trial court. *Ex parte Meza*, WR-83,51401 (Tex. Crim. App. Nov. 18, 2015) (unpublished).

Meza filed a timely federal petition raising three grounds for relief:

1. Trial counsel provided ineffective assistance by failing to: (a) employ expert witnesses; (b) investigate the facts and law of the case; and (c) challenge the deadly weapon special verdict question.

2. Insufficient evidence supported the jury's finding that he used a deadly weapon.

3. Appellate counsel provided ineffective assistance by not: (a) raising an insufficiency of the evidence claim relating to the deadly weapon finding and (b) consulting with an arson expert.

(Docket Entry No. 1, 6). Respondent has filed an answer and motion for summary judgment. (Docket Entry No. 21). Meza has not filed a response. This matter is ripe for adjudication.

## LEGAL STANDARDS

The writ of habeas corpus provides an important, but narrow, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "Society's resources have been concentrated at [a criminal trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *see also McFarland v. Scott*, 512 U.S. 849, 859 (1994) (stating that a "criminal trial is the 'main event' at which a defendant's rights are to be determined"). The States, therefore, "possess primary authority for defining and enforcing the criminal

law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). As "a foundational principle of our federal system," state courts "are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing AEDPA's "presumption that state courts know and follow the law"). Given this required deference to the state-court system, several principles circumscribe both the nature of federal habeas review and the availability of federal habeas relief.

How an inmate has litigated his federal constitutional claims determines the course of federal habeas adjudication. Under the exhaustion doctrine, AEDPA precludes federal relief on constitutional challenges that an inmate has raised for the first time in federal court. *See* 28 U.S.C. § 2254(b)(1). To comply with exhaustion, a petitioner must "fairly present his legal claim to the highest state court in a procedurally proper manner." *Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) (quotation omitted). As a corollary to exhaustion, the procedural-bar doctrine requires inmates to litigate claims in compliance with state procedural law. *See Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). When the operation of adequate and independent state procedural law precludes federal consideration, a petitioner may overcome the bar by showing: (1) cause and actual prejudice or (2) that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent[.]'" *Haley*, 541 U.S. at 393 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

If the inmate has presented federal constitutional claims to the state courts in a procedurally proper manner, and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review. "[A] habeas petitioner has the burden under AEDPA to prove that he is entitled to relief." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000); *see also DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). Under AEDPA's rigorous requirements, an inmate may only secure relief after showing that the state court's rejection of his claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).

To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exist only to "guard against extreme malfunctions in the state criminal justice systems . . ." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376 (2015) (quotation omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 134 S. Ct. at 1702 (quoting *Richter*, 562 U.S. at 103); *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Williams v. Taylor*,

529 U.S. 362, 413 (2000). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see also Wilson v. Sellers*, ___ U.S. ___, 138 S. Ct. 1188, 1192 (2018). "Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see also Johnson v. Williams*, ___ U.S. ___, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Respondent moves for summary judgment. Summary judgment is proper when the record shows "that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). AEDPA, however, modifies summary judgment principles in the habeas context. *See Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010) ("Summary judgement in federal habeas is different than in the average civil case."); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (Rule 56 "applies only to the extent that it does not conflict with the habeas rules"), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). For example, § 2254(e)(1), mandating that a state court's findings are presumed to be

correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant. *Smith*, 311 F.3d at 668. Unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See* 28 U.S.C. § 2254(e)(1).

Meza represents himself. Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as are pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (quotation omitted). Accordingly, "[t]he filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

Meza has not responded to the pending summary judgment motion and the time to do so has passed. The Court interprets Petitioner's failure "as a representation of no opposition." S.D. TEX. L.R. 7.4. The Court will nevertheless consider the parties' pleadings and the evidence of record when adjudicating the pending motion.

## ANALYSIS

### I. Ineffective Assistance of Trial Counsel (claim one)

Meza claims that his trial attorney provided ineffective representation in the investigation, preparation, and presentation of evidence for trial. Meza argues that trial counsel fell short of constitutional norms by failing to (1) employ expert witnesses; (2) engage in an adequate investigation of the facts; and (3) challenge the jury's finding that he used a deadly weapon when committing the offense. The state habeas court rejected Meza's first and second arguments. Meza must show that the state court's adjudication

correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant. *Smith*, 311 F.3d at 668. Unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See* 28 U.S.C. § 2254(e)(1).

Meza represents himself. Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as are pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (quotation omitted). Accordingly, "[t]he filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

Meza has not responded to the pending summary judgment motion and the time to do so has passed. The Court interprets Petitioner's failure "as a representation of no opposition." S.D. TEX. L.R. 7.4. The Court will nevertheless consider the parties' pleadings and the evidence of record when adjudicating the pending motion.

## ANALYSIS

### I. Ineffective Assistance of Trial Counsel (claim one)

Meza claims that his trial attorney provided ineffective representation in the investigation, preparation, and presentation of evidence for trial. Meza argues that trial counsel fell short of constitutional norms by failing to (1) employ expert witnesses; (2) engage in an adequate investigation of the facts; and (3) challenge the jury's finding that he used a deadly weapon when committing the offense. The state habeas court rejected Meza's first and second arguments. Meza must show that the state court's adjudication

was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

Meza, however, did not raise his third argument in state court. The unexhausted nature of that argument results in a procedural bar of its merits unless Meza makes an adequate showing of cause and prejudice. As Meza made no effort to overcome the procedural bar, this Court cannot reach the merits of his third ineffective-assistance argument.[2]

Courts assess an attorney's representation under the general conceptual framework set out in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Under *Strickland*, a criminal defendant's Sixth Amendment rights are "denied when a defense attorney's *performance* falls below an objective standard of reasonableness and thereby *prejudices* the defense." *Yarborough v. Gentry*, 540 U.S. 1, 3 (2003) (emphasis added); *see also Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Meza faces a heavy burden regarding the *Strickland* arguments he exhausted on state habeas review. While "[s]urmounting *Strickland*'s high bar is never an easy task[,]" *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), ineffective-assistance claims that the state courts have adjudicated on the merits warrant a "doubly deferential judicial review" under AEDPA. *Knowles v. Mirzayance*, 556 U.S. 111,123 (2009); *see also Cullen v.*

---

[2] In the alternative, the Court would deny this claim if its merits were fully available for federal review. As discussed at greater length in the alternative discussion of Meza's insufficiency-of-the-evidence claim, the evidence showed that Meza set a fire in an edifice whose roof became engulfed in flames, forcing first responders to retreat. At a bare minimum, the fire was capable of causing death or serious injury to firefighters. Given Texas law allowing fire or an accelerant to serve as a deadly weapon, a reasonable attorney could choose not to focus efforts on that defense and no reasonable probability of a different result would flow therefrom.

*Pinholster*, 563 U.S. 170, 190 (2011). A state court's adjudication of *Strickland* claims "must be granted deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101. "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

In his first argument, Meza claims that the state relied on "junk science" and that trial counsel should have called expert witnesses to disprove the State's theory of how the fire started. Also, Meza faults trial counsel for not calling a "video expert" to disprove the State's argument that he was the man seen in surveillance footage immediately before the fire started. An inmate, however, cannot merely argue that expert witnesses should have testified at trial. Instead, because "[c]laims of uncalled witnesses are disfavored," *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010), a petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Absent a showing that a particular witness would have offered testimony favorable to the defense, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001).

Meza does not identify any particular witness that his defense counsel could have called or allege facts showing how their testimony would have helped his defense. Meza's conclusory allegations do not overcome the strong presumption that his defense

counsel's chosen trial strategy was reasonable and do not establish deficient performance. *See Strickland*, 466 U.S. at 690. Absent a showing of deficient performance and actual prejudice as the result of his defense counsel's strategic decisions, Meza fails to show that he was denied effective assistance of counsel or that the state court's decision to reject this claim was unreasonable.

Meza also argues that trial counsel did not adequately investigate the State's witnesses and the homeowner. The state habeas court expressly found credible the affidavits submitted by Maza's former attorneys. Clerk's Record at 115. The affidavit submitted by trial counsel indicates a familiarity with the facts of the case and the prosecutorial theory he would face. Meza has not countered his attorney's affidavit with any information establishing what admissible evidence additional investigation would have produced. Without affidavit testimony proving what testimony and admissible evidence would have come from additional investigation, the Court can only speculate on both prongs of the *Strickland* analysis. Meza, therefore, has not shown that the state habeas court's adjudication was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1). The Court will deny Meza's first ground for relief.

**II. Sufficiency of the Evidence (claim two)**

In addition to instructing jurors on the elements necessary to convict Meza of arson, the trial court provided information regarding a "special issue verdict" on the use of a deadly weapon. Clerk's Record at 58. Jurors found that he used a "[d]eadly weapon" in the arson, meaning "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Clerk's Record at 58. In his second

ground for relief, Meza argues that the evidence did not show that he used a deadly weapon -- fire -- because the "only piece of evidence . . . at trial . . . related to this issue" was the presence of firemen in and around the house. The Court finds that this claim is both procedurally barred and without merit.

Meza raised an insufficiency-of-the-evidence claim on direct appeal arguing that the State inadequately proved that the fire was intentionally set. Meza raised his current insufficiency claim relating to the deadly weapon finding on state habeas review. The Texas Court of Criminal Appeals, however, "has long held that the sufficiency of the evidence may only be raised on direct appeal, and may not be raised in state habeas." *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996); *see also Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012) ("Register did not raise his sufficiency of the evidence claim on direct appeal, and it was not cognizable on state habeas review."); *Coleman v. Quarterman*, 456 F.3d 537, 546 (5th Cir. 2006) ("[I]n Texas, sufficiency of the evidence is only reviewable on direct appeal."). Texas' refusal to recognize sufficiency-of-the-evidence claims on habeas review is an adequate and independent procedural bar to federal review.[3]

---

[3] The Court of Criminal Appeals denied Meza's state habeas application without written order. The law general considers a Texas court's denial of a state habeas application without written order to be an adjudication on the merits. *See Walters v. Quarterman*, 258 F. App'x 697, 698 (5th Cir. 2007); *Salazar v. Dretke*, 419 F.3d 384, 398 (5th Cir. 2005); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). The record, however, does not contain any suggestion that the Court of Criminal Appeals intended its order to overrule its well-established precedent that sufficiency-of-the-evidence claims are not cognizable on habeas review. Given the entrenched jurisprudence holding that such claims are procedurally unavailable on habeas, considering the State's arguments for the procedural dismissal of the non-

Alternatively, this claim is without merit. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a reviewing court affirms a jury's conviction if, considering all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have returned a verdict unfavorable to the defendant. In assessing the sufficiency of the evidence, "federal habeas courts should independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the essential elements required by the *Jackson* sufficiency inquiry." *Bledsue v. Johnson*, 188 F.3d 250, 260 (5th Cir. 1999). The federal constitutional issue in this case is "whether the evidence was constitutionally sufficient to convict [petitioner] of the crime charged." *Id.* at 262 (quoting *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991)). This demanding inquiry is highly deferential to, and resolves any conflicting evidence in favor of, the jury's verdict. *See United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002); *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990).

The jury instructions allowed for a special issue finding if the jury found "from the evidence beyond a reasonable doubt that [Meza] used or exhibited a deadly weapon, to wit: fire . . . during the commission of the offense alleged in the indictment." Clerk's Record at 58. The trial court informed jurors that "'[d]eadly weapon means anything that

---

cognizable claim, and Meza's failure to respond to the summary judgment motion, the Court presumes that the state habeas court's rejection of this claim was on procedural grounds. Also, the Fifth Circuit has relied on Texas' standard approach in these cases to impose a procedural bar on a sufficiency-of-the-evidence claim when the state habeas court denied an application without written order. *See Reed v. Thaler*, 428 F. App'x 453, 454 (5th Cir. 2011) (unpublished per curiam ).

in the manner of its use or intended use is capable of causing death or serious bodily injury." Clerk's Record at 58.

When applying the *Jackson* standard, a "federal habeas court refers to the state's criminal law for the substantive elements of the offense." *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999). Texas law defines "deadly weapon" as:

> (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or
>
> (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE ANN. § 1.07(a)(17) (West Supp. 2017). Fire is not a deadly weapon *per se*. Nevertheless, "[f]ire is inherently dangerous . . . and . . . is capable of inflicting serious bodily harm, especially when it is intentionally started in a residential neighborhood." *Pruett v. State*, 510 S.W.3d 925, 929 (Tex. Crim. App. 2017). Texas courts have found fire to be a deadly weapon when people other than the defendant are present and capable of being injured. *See, e.g., Mims v. State*, 335 S.W.3d 247, 249 (Tex. App. -Houston [1st Dist.] 2010, pet. ref'd) (holding fire was deadly weapon because appellant used it to kill her husband); *McDowell v. State*, 225 S.W.3d 294, 297 (Tex. App. -Texarkana 2007, no pet.). Even if no one is present in the edifice that the arsonist sets ablaze, fire may still be "dangerous [when] left unattended," especially if the defendant "used an accelerant" because it may "endanger[] not only the lives of the firefighters who responded to the call but also the lives of neighbors who could have been killed or seriously injured if the fire continued to spread." *Pruett*, 510 S.W.3d at 929. A

fire may also "pose[] a danger from both the heat effects and the emissions of toxic chemicals." *Id*.

The focus, therefore, is if the defendant used fire, or intended to use it, in a manner capable of causing death or seriously bodily injury. *See Mims v. State*, 335 S.W.3d 247, 249 (Tex. App.-Houston [1st Dist.] 2010, pet. ref'd). The Texas Court of Criminal Appeals has emphasized that "something becomes a deadly weapon because it is *capable* of causing death or serious bodily injury, not because it actually does so." *Pruett*, 510 S.W.3d at 928 (emphasis added).[4] Here, the evidence was sufficient for jurors to find that the fire could have caused death or serious injury. Meza set the fire late at night. There was no evidence as to whether or not Meza knew that the house was unoccupied when he set the fire. First responders entered the house when the blaze started. As the fire progressed, flames shot fifty to sixty feet in the air, engulfing a third of the roof, forcing firemen into retreat outside for fear that the ceiling would collapse. A fire marshal described the blaze as a "full growth" fire what was a "perfect storm" of heat, fuel, and oxygen. The fire marshal testified that the fire could have been a deadly weapon. Given that evidence, rational jurors could have found that Meza used a deadly weapon in the commission of his offense. Even if procedurally available for federal review, the Court finds that Meza's second ground for relief is without merit.

---

[4] In *Pruett*, the defendant set fire a house knowing no one was home. A neighbor put out most of the fire with a garden hose before the fire department arrived. The Court of Criminal Appeals held: "When evidence at trial demonstrates that someone ignites combustible material to intentionally burn down a house in a residential neighborhood, a deadly-weapon finding may appropriately attach to the arson conviction when the fire is capable of causing death or serious bodily injury." *Pruett*, 510 S.W.3d at 929.

### III. Ineffective Assistance of Counsel (claim three)

In his final claim, Meza argues that appellate counsel provided defective representation by not (1) raising a challenge to the evidence supporting the deadly weapon finding and (2) consulting with an arson expert. In an affidavit that the state habeas court expressly found to be credible, state appellate counsel explained that he had researched whether fire could be a deadly weapon and whether the evidence in this case supported the jury's finding. State Habeas Record at 80-81. After considering the trial evidence, appellate counsel decided not to raise an insufficiency-of-the-evidence claim on that basis. State Habeas Record at 81. Appellate counsel, in short, made a reasonable investigation and made a strategic decision not to raise a meritless claim. Such representation is within the "wide range of professionally competent assistance" guaranteed by the Constitution. *Smith v. Murray*, 477 U.S. 527, 536 (1986).

Additionally, appellate counsel explained that it would "have been inappropriate for [him] to hire an expert to 'review' the arson investigation." State Habeas Record at 79. Traditional appellate review is restricted to the record before the court; habeas corpus is the proper forum for the introduction of new factual information. Even to the extent an arson expert could inform appellate counsel's understanding of the trial record, Meza has not shown how an arson expert would have enhanced the claims appellate counsel raised on direct appeal. Because Meza does not rely on anything more than speculation and surmise, the Court summarily denies this portion of his ineffective-assistance-of-appellate-counsel claim.

Meza has not shown that the state habeas court's rejection of his third claim was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

## CERTIFICATE OF APPEALABILITY

Under AEDPA, a prisoner cannot seek appellate review from a lower court's judgment without receiving a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c). Meza has not yet requested that this Court grant him a COA, though this Court can consider the issue *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Slack v. McDaniel*, 529 U.S. 473, 482 (2000). A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Fifth Circuit holds that the severity of an inmate's punishment, even a sentence of death, "does not, in and of itself, require the issuance of a COA." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The Fifth Circuit, however, anticipates that a court will resolve any questions about a COA in the death-row inmate's favor. *See Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). The Supreme Court has explained the standard for evaluating the propriety of granting a COA on claims rejected on their merits as follows: "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. On the other hand, a district court that has denied habeas relief on procedural

grounds should issue a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. Unless the prisoner meets the COA standard, "no appeal would be warranted." *Slack*, 529 U.S. at 484.

Having considered Meza's petition, and in light of AEDPA's standards and controlling precedent, this Court determines that a COA should not issue on any claim.

## CONCLUSION

For the reasons described above, the Court **GRANTS** Respondent's motion for summary judgment, **DENIES** Meza's petition, and **DISMISSES** this case **WITH PREJUDICE**. All other requests for relief are **DENIED**. The Court will not certify any issue for appellate review.

The Clerk will provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 25th day of May, 2018.

_____
George C. Hanks Jr.
United States District Judge